IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| | Cv. No. 05-2518-Ml/P |
| vs. | Cr. No. 02-20486-01-Ml |
| LUIS VEGA, | |
| Defendant. | |

---

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Defendant Luis Vega, Bureau of Prisons inmate registration number 18806-076, who is currently an inmate at the United States Penitentiary in Lompoc, California, filed a pro se motion pursuant to 28 U.S.C. § 2255 on July 21, 2005, accompanied by a legal memorandum and a motion seeking appointment of counsel. Vega filed a notice of change of address on December 2, 2005.

On December 11, 2002, a federal grand jury returned a three-count indictment against Vega and a codefendant. The first count charged both defendants, aided and abetted by each other, with possession of an amount in excess of five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to deliver, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The second count charged Vega with

possession of approximately five grams of cocaine with the intent to deliver, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The third count charged Vega with possession of approximately eighty-seven (87) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to deliver, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The grand jury returned a superseding indictment on March 12, 2003 that reasserted the counts in the original indictment and added a fourth count charging Vega, an alien who had previously been deported, with reentering the United States without having obtained the consent of the Attorney General for re-application for admission into the United States, in violation of 8 U.S.C. §§ 1326(a) & (b)(2).

Pursuant to a written plea agreement, Vega appeared before this judge on September 26, 2003 to enter a guilty plea to counts 1 and 4 of the superseding indictment. The Court conducted a sentencing hearing on December 2, 2003, at which time Vega was sentenced to one hundred eighty-eight (188) months imprisonment, to be followed by a five-year period of supervised release.[1] Judgment was entered on December 4, 2003. The United States Court of Appeals for the Sixth

---

[1] With respect to count 1, § 2D1.1(c)(3) of the United States Sentencing Guidelines ("U.S.S.G") provides that the base offense level for at least 1.5 kilograms, but less than 5 kilograms, of methamphetamine is 34. As there were no adjustments, the adjusted offense level for count 1 was 34. With respect to count 4, pursuant to U.S.S.G. § 2L1.2(a), the base offense level for unlawful entry into the United States is 8. Vega received a 16-point enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), because he had been previously deported after a felony conviction for a drug trafficking offense for which the sentence imposed exceeded 13 months, resulting in an adjusted offense level of 24 for count 4. Pursuant to U.S.S.G. § 3D1.4(c), the offense level for sentencing purposes is 34. Vega received a three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 31. Given his criminal history category of VI, the guidelines called for a sentencing range from 188-235 months.

Circuit affirmed. <u>United States v. Vega</u>, 107 Fed. Appx. 482 (6th Cir. Aug. 5, 2004).

On July 21, 2005, Vega filed a motion pursuant to 28 U.S.C. § 2255 in which he raised the following issues:

1. Trial and appellate counsel rendered ineffective assistance, in violation of the Sixth Amendment, due to (a) trial counsel's failure to object to the drug quantity; (b) trial counsel's failure adequately to explain the contents of the presentence report and to file objections to the report; (c) trial counsel's failure to retain an interpreter and explain the plea agreement and the operation of the relevant sentencing guidelines; (d) trial counsel's failure to object to the enhancements for his prior convictions; and (e) appellate counsel's failure to file a merits brief;[2]

2. His sentence was imposed in violation of the Sixth Amendment, as interpreted in <u>United States v. Booker</u>, 543 U.S. 220 (2005), due to the fact that he was sentenced for a drug quantity in excess of the amount he admitted knowledge of;

3. His sentence was imposed in violation of the Sixth Amendment and <u>Booker</u> due to the fact that his sentence was enhanced due to his prior convictions; and

4. His sentence was imposed in violation of the Sixth Amendment and <u>Booker</u> due to the fact that the sentencing court was under the mistaken belief that the sentencing guidelines were mandatory.

The Court will address the second, third, and fourth issues before considering the ineffective assistance claim.

Vega's second, third, and fourth issues suggest that he is entitled to a new sentencing hearing in light of the Supreme Court's decision in <u>Booker</u>, which was not issued until after the conclusion of Vega's direct appeal.

---

[2] Although the heading to the relevant section of Vega's memorandum states that appellate counsel failed to perfect a direct appeal, he did, in fact, have a direct appeal. The text of the memorandum makes clear that Vega is objecting to the filing of an <u>Anders</u> brief by his appellate counsel.

3

"As a general rule, new constitutional decisions are not applied retroactively to cases that were finalized prior to a new Supreme Court decision." Goode v. United States, 305 F.3d 378, 383 (6th Cir. 2002); see Schriro v. Summerlin, 542 U.S. 348, 351-58 (2004) (holding that decision in Ring v. Arizona, which held that a sentencing judge in a capital case may not find an aggravating factor necessary for imposition of the death penalty, and that the Sixth Amendment requires that those circumstances be found by a jury, does not apply retroactively to cases on collateral review); Teague v. Lane, 489 U.S. 288 (1989). Applying these standards, the Sixth Circuit has held that Booker issues cannot be raised in an initial motion pursuant to 28 U.S.C. § 2255. Humphress v. United States, 398 F.3d 855, 860-63 (6th Cir. 2005). Accordingly, Vega's second, third, and fourth issues, which rely exclusively on Booker, are without merit and are dismissed.

Vega's first issue is a claim that his trial and appellate counsel rendered ineffective assistance, in violation of the Sixth Amendment. A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair

> trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In order to demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'") (citations omitted).

5

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the

proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

The two-part test articulated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973). Moreover, "in order to satisfy [Strickland's] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.[3]

---

[3] The Supreme Court emphasized that,

> [i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 59.

Vega first contends that his trial counsel rendered ineffective assistance by failing to object to the drug quantity. The factual basis for this issue is as follows:

> The record clearly shows that during the change of plea proceeding defendant only admitted to knowledge of 300 grams. Also during the hearing the government said that three persons exited the defendant [sic] truck at a local mall and the truck contained 2,600 grams of the drug on one side of the cab and 300 additional grams on passenger's side. The defendant didn't know how to speak english [sic] and tapped his attorney on the arm and shook his head and stated "no". [T]he fact that defense counsel failed to object constitutes a violation of the Six [sic] Amendment requiring correction of his sentence.

Brief in Support of Defendant Luis Vega [sic] Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed July 21, 2005 ("D. Br."), at 9.

The first count of the superseding indictment, to which Vega entered a guilty plea, charged him with possession of more than five hundred (500) grams of methamphetamine. A total of approximately 2950 grams of methamphetamine was seized from Vega's vehicle and person at the time of his arrest.[4] At the change of plea hearing, Vega was informed that he could be convicted on count 1 on the basis of his own conduct and on the conduct of his codefendant that is properly attributable to him. 09/02/03 Tr. at 16-18. Although Vega originally testified in an equivocal manner that he was only directly aware of three hundred (300) grams of methamphetamine, id. at 19-24, he later concurred with the following description of the relevant conduct, as stated by the prosecuting attorney:

---

[4] Vega was sentenced on the basis of a drug quantity between 1.5 kilograms and 5 kilograms, which represents the amount of methamphetamine in his truck.

8

    **MS. CRAIG:**     Your Honor, this was a matter of an undercover investigation with the local DEA and the DEA in Mississippi, and the genesis of the case that resulted in the arrest of Mr. Sanchez and Mr. Vega on May 8th of 2002 is they had previously had contact with Mr. Luis Vega on May 1st, 2002. The [confidential informant ("CI")] bought about three ounces of methamphetamine from Mr. Vega as a sample for the larger deal that they were trying to negotiate that did, in fact, occur on May 8th. They arranged to buy approximately seven pounds of methamphetamine. On—the officers received information that some Hispanic males would be transporting the drugs and staying at a Motel 6 located in Memphis. They set up surveillance on that motel, observed four male Hispanics, one of them being the co-defendant, Mr. Sanchez. They were operating a Cadillac that was bearing the registration number SPE166 that showed to be owned by this defendant, Mr. Luis Vega. On the day of May the 8th, two Hispanic males who were not at that time named left in this Cadillac. One of them did eventually turn out to be Mr. Sanchez. They met with Mr. Vega, and I believe the lady's name is Gertrude Contreras, is that correct?

    **THE DEFENDANT:** Yes.

    **MS. CRAIG:**      Who I believe is the defendant's wife. The deal was to take place at the Mall of Memphis, and this Tiger Mart they met up at was near the Mall of Memphis. Getting back into Mr. Vega's truck was Mr. Sanchez, his wife and this defendant, Mr. Vega. They were followed to the Mall of Memphis by the white Cadillac. The Cadillac was detained as it entered the mall. The people in the truck, Mr. Sanchez, Mr. Vega and his wife exited the truck, went into the mall. When they came back and got back in the truck, they were detained. Found in the truck was—in the cab was located approximately 2,600 grams of methamphetamine, an additional 300 grams was in the passenger's side of the—in the back—pardon me, in the cab of the truck was 2,600 grams of methamphetamine, in the back of the truck was an additional approximately 300 grams. On Mr. Vega's person was approximately 50 grams of methamphetamine and approximately five grams of cocaine.[5]

    . . . .

---

[5] In the instant motion, Vega falsely suggests that he had possession or knowledge of the 300 grams, which was located on the passenger side of the truck, and he had no knowledge of the 2600 grams located on the driver side. In fact, the 2600 grams was located in the cab of the truck and the 300 grams were in the back.

> **THE COURT:** Mr. Vega, the United States has made a longer statement, do you agree with what Ms. Craig has had to say?
>
> **THE DEFENDANT:** Yes, sir.
>
> **THE COURT:** And did you understand it all?
>
> **THE DEFENDANT:** Yes, sir.[6]
>
> **MR. SCHOLL:** I think where the confusion was, Your Honor, is that he had explained to me that he knew that there was at least 300 grams of meth in there, didn't know the complete total weight of everything, but he knew that—and I think, as Your Honor sees, it was divided up, there was a 2,600 gram package and a 300-gram package, and he explained to me that he knew that there was at least 300 grams in there, plus some, but he just didn't know the exact weight of the rest of it.
>
> **THE COURT:** All right. Mr. Vega, they also described that previously you had sold three grams to the person that you were going to sell this additional meth to, were they right about that?
>
> **THE DEFENDANT:** Yes, sir.
>
> . . . .
>
> **THE COURT:** The reason I want to make sure we get it all tied together. The reason I'm asking these questions is we try to make a determination initially as to whether you're really acknowledging the conduct so that we can determine whether you get acceptance of responsibility or not, and that's what we're talking about.
>
> Well, we have talked about all of these things, you have told me about it, Ms. Craig has told me about it, and there have been no objections. In fact, there has been some elaboration as to what actually occurred. Having heard all these things, how do you wish to plead to Count 1 and 4 of the indictment, do you plead guilty or do you plead not guilty?
>
> **THE DEFENDANT:** Plead guilty.

Id. at 25-26, 27-28, 29; see also id. at 13-14 (Vega is pleading guilty of his own free will because he is guilty). This factual

---

[6] Vega's understanding of the English language will be addressed infra.

recitation makes clear that Vega understood the proceedings and had the opportunity personally to contest his responsibility for the additional drug quantity but chose not to do so.

The Sixth Circuit, on direct appeal, found that "Vega's plea was valid." United States v. Vega, 107 Fed. Appx. at 484. The Sixth Circuit also found that Vega was sentenced on the basis of the correct drug quantity. Id. at 485. As Vega made an intelligent and voluntary guilty plea to count 1 of the superseding indictment, and as he was properly held accountable for the entire quantity of methamphetamine found in his truck, this issue is without merit.

Next, Vega asserts that his trial counsel rendered ineffective assistance by failing adequately to explain the contents of the presentence report and to file objections to the report. The factual basis for this contention is as follows:

> Via preparal [sic] of Presentence Report (PSR) in this case. [T]he report due undue enhancements reccomendations [sic] he asked his attorney to object to and for a interpreter to explain (PSR) and facts of his case to him but he was ignored. In spite of Fed.R.Crim.Procedure Rule 32 requiring that a defendant be disclosed the (PSR} at least 10 days prior to sentencing, prejudically trial counsel never granted his request for a interpreter, explain the (PSR) to him or file wirtten [sic] or other objections to the erroneous portions of the (PSR).

D. Br. at 9.

As a preliminary matter, Vega's presentation of this issue does not comply with Rule 2(b) of the Rules Governing § 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), which requires, inter alia, that the motion shall (1) specify all the grounds for relief available to the moving party[ and] (2)

11

state the facts supporting each ground." Although the Sixth Circuit has not had occasion to address the pleading standards applicable to § 2255 motions, the Second Circuit has stated as follows:

> To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted); accord Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading").[7]

In this case, Vega does not enumerate the sentencing enhancements he believes were inappropriate. The presentence report makes clear that only the drug-trafficking offense had any effect on the length of Vega's sentence, and no sentencing enhancements were applied in calculating the sentence for that offense. See supra p. 2 n.1.

Moreover, Vega's assertions that he was not provided a copy of the presentence report and was unable to understand it because of his inability to read and speak English are contradicted by statements made at the change of plea hearing. The Court examined Vega at length at the change of plea hearing, which was conducted without an

---

[7] Although these decisions interpreted the previous version of Rule 2(b), the advisory committee notes make clear that the 2004 amendments "are intended to be stylistic and no substantive change is intended," with certain exceptions not applicable here.

interpreter, and inquired into his ability to speak and read English. 09/02/03 Tr. at 5, 9. Vega answered the questions put to him in an intelligent manner, and at no time did he advise the Court that he did not understand the proceedings or required an interpreter. In particular, Vega was knowledgeable about the penalty range on count 1, id. at 8 (stating that the sentencing range was "no less than ten years, no more than life"), and it appeared that he was able to read the penalty ranges listed in the text of the indictment, id. Vega also testified that he was satisfied with the representation afforded by trial counsel, id. at 9, and that trial counsel reviewed the plea agreement with him, id.; see also id. (statement of Mr. Scholl: "We met yesterday, Your Honor. I went over each paragraph with him."). At the sentencing hearing, defense counsel stated as follows: "[W]e had no objections. The report came out exactly like my calculations that I discussed with my client prior to entering his change of plea." 12/02/03 Tr. at 3. Vega was given an opportunity to make a statement, and he did not complain about his counsel's performance or raise any objection to the presentence report. Id. at 5-6.

This issue is without merit, and it is DISMISSED.

Vega also complains that his trial counsel did not retain an interpreter and explain the plea agreement and the operation of the relevant sentencing guidelines. The factual basis for this issue, as stated in Vega's brief, is as follows:

> Trial counsel failed entirely to explain to defendant the full impact of the plea agreement. Trial counsel also completely failed to explain the varying sentencing enhancements available under the guidelines. It is defendant [sic] contention that had he been fully and

13

>     properly advised in these areas and received a interpreter
>     to explain these facts to him, he would not have pleaded
>     guilty under an agreement that could or would produce the
>     188 month's sentence he received.

D. Br. at 9.

The foregoing discussion about the sentencing hearing makes clear that this issue is entirely lacking in merit. Trial counsel carefully reviewed the plea agreement with Vega and advised him of the relevant penalty range. The Court's plea colloquy ensured that Vega's guilty plea was intelligent and voluntary. This issue is DISMISSED.

Finally, Vega complains that his trial counsel failed to object to the enhancements for his prior convictions. However, nothing in Vega's motion indicates that counsel had any factual basis for objecting to the calculation of his criminal history category. This issue is without merit and is DISMISSED.

Vega also complains that his appellate counsel rendered ineffective assistance by failing to file a merits brief. A criminal defendant is entitled to the effective assistance of counsel on direct appeal. Evitts v. Lucey, 469 U.S. 387, 396 (1985). The failure to raise a nonfrivolous issue on appeal does not constitute per se ineffective assistance of counsel, as "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. Smith v. Murray, 477 U.S. 527, 536 (1986) (citation omitted). Claims of ineffective assistance of appellate counsel are evaluated using the Strickland standards. Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland to claim

that appellate counsel rendered ineffective assistance by failing to file a merits brief); Smith v. Murray, 477 U.S. at 535-36 (1986) (failure to raise issue on appeal). Thus, in order to establish a claim that appellate counsel was ineffective in failing to raise an issue, a prisoner

> must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

Smith v. Robbins, 528 U.S. at 285 (citation omitted).[8]

---

[8]   The Sixth Circuit has articulated a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

1.   Were the omitted issues "significant and obvious?"

2.   Was there arguably contrary authority on the omitted issues?

3.   Were the omitted issues clearly stronger than those presented?

4.   Were the omitted issues objected to at trial?

5.   Were the trial court's rulings subject to deference on appeal?

6.   Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7.   What was the appellate counsel's level of experience and expertise?

8.   Did the petitioner and appellate counsel meet and go over possible issues?

9.   Is there evidence that counsel reviewed all the facts?

10.  Were the omitted issues dealt with in other assignments of error?

11.  Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Franklin v. Anderson, 434 F.3d 412, 429 (6th Cir. 2006) (citing Mapes v. Coyle, 171
(continued...)

In this case, Vega does not enumerate the issues he contends should have been raised on direct appeal, asserting only that "[t]he defendant clearly had sevral [sic] issues at time of direct appeal with merit." D. Br. at 10. If he contends appellate counsel should have raised the substance of the various acts and omissions already attributed to trial counsel, the Court has determined that those issues lack merit. Moreover, defense counsel did not move to withdraw the guilty plea, nor did he raise any objection to the presentence report. Where, as here, the defendant makes an intelligent and voluntary guilty plea and he is sentenced according to the guidelines, there is little that appellate counsel could reasonably have done. Vega has not satisfied his burden of establishing either deficient performance or prejudice. This issue is without merit and is DISMISSED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Section 2255 Rules. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, his motion is DENIED. In light of the dismissal of this action, the motion for appointment of counsel is DENIED.

---

[8] (...continued)
F.3d 408, 427-28 (6th Cir. 1999)).

16

Consideration must also be given to issues that may occur if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief.

> After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[9]

In this case, the defendant's claims are clearly without merit and many are barred by the decision in Humphress. Because he cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to

---

[9] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952.[10] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in forma pauperis</u>, the prisoner must file his motion to proceed <u>in forma pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED. Accordingly, if movant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 15th day of June, 2006.

    /s/ Jon P. McCalla
    JON PHIPPS McCALLA
    UNITED STATES DISTRICT JUDGE

---

[10] Effective April 9, 2006, the appellate filing fee increased to $455 from $255.